**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Charles Jay Wolff</u>

      v.                                        Civil No. 06-cv-321-PB

<u>New Hampshire Department
of Corrections, et al.</u>

**<u>REPORT AND RECOMMENDATION</u>**

Pro se plaintiff Charles Jay Wolff brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA").  Construed liberally, the complaint alleges that defendants have denied Wolff a kosher diet consistent with his faith, thereby abridging his right to freely exercise his religion and substantially burdening his religious practices (document nos. 5, 7 and 10).  Named as defendants are the New Hampshire Department of Corrections ("NHDOC")[1] and three NHSP employees: Jeff Perkins, Director of Food Services; Gency Morse; and James Daly.

The complaint is before me for preliminary review to

---

[1]I construe the claims against the NHDOC as claims against the NHDOC Commissioner, William L. Wrenn, in his representative capacity.

determine whether, among other things, it states a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I conclude that Wolff has stated Section 1983 and RLUIPA claims against Wrenn, Perkins and Daly based on the denial of free exercise of religion and the substantial burden on religious practices.

### Standard of Review

In reviewing a pro se complaint, this court must construe the pleadings liberally and in favor of that party.  <u>See</u> <u>Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by a plaintiff and the inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration. <u>See</u> <u>Eveland v. Director of CIA</u>, 843 F.2d 46, 49 (1st Cir. 1988). I apply this standard in reviewing Wolff's complaint.

**Background**

While incarcerated at the NHSP, Wolff allegedly was denied a kosher diet consistent with his faith.  Although he has not identified his affiliation with a particular religion or a religious group, Wolff contends that he was previously provided a kosher diet for religious reasons and now seeks to have his kosher diet reinstated.  He adds that a bland diet is necessary for an underlying and undisclosed medical condition.  By denying Wolff a kosher diet and other special food items required by his faith, defendants allegedly have interfered with his free exercise of religion.

Jeff Perkins, Director of Food Services at the NHSP, allegedly imposed Wolff's current non-kosher diet and removed him from his kosher diet after discovering that Wolff had eaten non-kosher ice cream.  Wolff contends that the ice cream was kosher, as later verified by NHSP Chaplin Dan Smith and a rabbi.  Perkins subsequently assured Wolff that he would reinstate his kosher diet but failed to do so.  As a result of the diet imposed by Perkins, Wolff allegedly has consumed only bread and water and has suffered a weight loss of forty-nine pounds.

Wolff alleges that he has exhausted the administrative

grievance procedures available to him at the NHSP and, in doing so, has advised prison officials of his religious dietary needs. Through grievances allegedly submitted to William L. Wrenn, Commissioner of the NHDOC, Greg Crompton, Deputy Warden of the NHSP, and Daly from December 2005 through July 2006, Wolff requested a kosher diet and informed defendants of the restrictions placed on his religious dietary needs.[2]  Although Wolff has not provided copies of the grievances filed with the defendants, he claims that the defendants had knowledge of his dietary needs, failed to adequately respond to his requests and failed to provide him with a kosher diet and other special food items.  Over one year has elapsed since Wolff made his initial request, and to date his request has not been met.

He now brings this action, alleging that defendants' acts and omission not only abridge his First Amendment right to free exercise of religion under Section 1983 but also violate provisions of RLUIPA.  He requests a kosher diet and particularized food items that ostensibly are required by his

---

[2]Although Wolff also alleges that he submitted a grievance to Morse, he has not identified the substance of the grievance or provided a copy of the grievance to this Court.

4

faith.[3]

## Discussion

I.   <u>Section 1983</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>accord</u> <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061–62 (1st Cir. 1997).  The premise of Wolff's Section 1983 action is that defendants, acting under color of state law, have violated his rights under the First Amendment's Free Exercise Clause,[4] as

---

[3]The particularized food items sought by Wolff include: kosher donuts; kosher cakes; Carnation Instant Breakfast Milk; prepackaged day cereal; prepackaged oatmeal; fresh fruit; kosher rye bread; kosher condiments; water with Nutraboost fortified iced tea mix or milk; kosher cookies; and a kosher diabetic snack.  In addition, he requests that his frozen kosher meals be reheated by civilian staff personnel.  (Complaint (doc. No. 10) at p. 1–2)

[4]The relevant provision of the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. Amend. I (hereinafter "Free Exercise Clause").

applied to the states through the Fourteenth Amendment.

    A.   Free Exercise of Religion

It is well-established that convicted prisoners do not
forfeit all constitutional protections by reason of their
incarceration.  See Bell v. Wolfish, 441 U.S. 520, 545 (1979).
"In the First Amendment context . . . a prison inmate retains
those First Amendment rights that are not inconsistent with his
status as a prisoner or with the legitimate penological
objectives of the corrections system," Pell v. Procunier, 417
U.S. 817, 822 (1974), including the right to free exercise of
religion, see O'Lone v. Estate of Shabazz, 482 U.S. 342, 348
(1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)); accord
Moorish Science Temple, Inc. v. Smith, 693 F.2d 987, 990 (2d Cir.
1982) ("[A] prisoner retains those First Amendment guarantees,
including the right to participate in practices which are an
integral part of his religious faith . . ..").  Prisons must
provide all inmates reasonable opportunities to exercise their
religious freedom.  See Cruz, 405 U.S. at 322 n.2.

Free exercise claims brought by prisoners are "judged under
a 'reasonableness' test less restrictive than that ordinarily
applied to alleged infringements of fundamental constitutional

rights." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003)
(quoting O'Lone, 482 U.S. at 349). See also Shaw v. Murphy, 532
U.S. 223, 227-229 (2001). The Supreme Court has held that a
prisoner's sincerely held religious beliefs must yield if
contrary to prison regulations that are "reasonably related to
legitimate penological interests." Turner v. Safley, 482 U.S.
78, 89 (1987); see also, Washington v. Harper, 494 U.S. 210, 224
(1990) (prison restrictions that implicate constitutional rights
are judged by the reasonableness standard); O'Lone, 482 U.S. at
351-352 (the Constitution does not require the prison to
sacrifice legitimate penological objectives to satisfy an
inmate's desire to exercise his religion so long as an inmate is
not deprived of all forms of religious exercise).

Here, Wolff alleges that during his incarceration at the
NHSP, Perkins and Daly have denied him a kosher diet consistent
with his religion. Although he has not identified his
affiliation with a particular religion or religious group, he
appears to allege that a kosher diet is required by his faith and
was provided to him previously for religious purposes. Through
grievances submitted to Wrenn and Daly from December 2005 through
July 2006, Wolff repeatedly informed defendants of his need for a

7

kosher diet and the restrictions placed on his religious dietary needs.[5]  Wolff also informed Perkins of his religious dietary needs, however, Perkins allegedly imposed a non-kosher diet upon Wolff and refused to reinstate his former kosher diet.  As a result of the diet imposed by Perkins, Wolff allegedly has suffered a weight loss of forty-nine pounds.

Despite Wolff's repeated requests, defendants have denied him a kosher diet, thereby interfering with his free exercise of religion.  More than one year has elapsed since he first informed defendants of the alleged deprivations but to date he has not received an adequate response.  If true, these allegations may state a cognizable claim under the First Amendment's Free Exercise Clause against Wrenn, Perkins and Daly.

In addition, Wolff broadly alleges that Morse failed to respect him and his religion.  There is no indication in the record that Morse denied Wolff a kosher diet or otherwise interfered with his religious dietary needs.  Because Wolff has failed to allege sufficient predicate facts in support of a First Amendment claim against Morse, I recommend that this claim be

---

[5]Although Wolff alleges that he submitted a grievance to Morse, he has not identified the substance of the grievance or provided a copy of the grievance to this Court.

8

dismissed in its entirety.

II.  RLUIPA Claim

I liberally construe the complaint to allege that defendants' actions have burdened Wolff's religious practice under RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion.  See Mayweathers v. Newland, 314 F.3d 1062, 1065 (9th Cir. 2002).

Under RLUIPA, governmental imposition of "substantial burden on the religious exercise" of a prisoner is prohibited, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a). The phrase "religious exercise" is to be construed liberally to include belief and profession as well as the performance of physical acts such as assembling with others to worship or participating in sacramental use of bread and wine.  See Cutter v. Wilkinson, 544 U.S. 709, 720 (2005).  RLUIPA applies to both substantial burdens imposed by programs or activities that receive federal financial assistance and to substantial burdens on religious exercise having an effect on interstate commerce. Id at 715-16; 42 U.S.C. § 2000cc-1(b).  Once a plaintiff produces

prima facie evidence to support a free exercise violation, the
plaintiff bears the burden of persuasion on whether the
regulation substantially burdens his exercise of religion and the
state bears the burden of persuasion on all other elements.  42
U.S.C. § 2000cc-2(b).

Construed liberally, the complaint alleges that Wrenn,
Perkins and Daly have substantially burdened Wolff's religious
beliefs by denying him a kosher diet and preventing him from
observing his faith.  If true, these allegations may state a
cognizable claim under RLUIPA against Wrenn, Perkins and Daly.
Because Wolff has failed to allege sufficient predicate facts
against Morse, I recommend that the RLUIPA claim against him be
dismissed in its entirety.

III. <u>Official Capacity</u>

Construed liberally, the complaint seeks injunctive and
monetary relief for wrongs committed by the Wrenn, Perkins and
Daly as state actors in their official capacities.  It is well-
settled that the Eleventh Amendment bars suits against state
entities and state agents working in their official capacities
unless the state has expressly waived immunity, which has not
been done by New Hampshire for actions brought under Section

1983.  <u>See</u> <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,</u>
<u>Inc.</u>, 506 U.S. 139, 144 (1993) (absent waiver, neither a State
nor agencies acting under its control may be subject to suit in
federal court); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S.
58, 71 (1989)(holding that neither a state nor its officials
acting in their official capacities are "persons" under Section
1983).  Official capacity suits against officers of an agency are
simply "another way of pleading an action against an entity of
which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  To
the extent Wolff brings official capacity claims for monetary
relief against the state defendants, all of whom are officials or
employees of the NHDOC or NHSP, I recommend that those claims be
dismissed.

On the other hand, official capacity actions against state
actors for prospective injunctive relief are not treated as
actions against the state and may be considered under Section
1983.  <u>See</u> <u>Will</u>, 491 U.S. at 71 n.10.  Thus, Wolff is not barred
from bringing claims for prospective injunctive relief against
the defendants in their official capacities.

## Conclusion

For the reasons stated above, I find that Wolff has alleged

Section 1983 and RLUIPA claims against Wrenn, Perkins and Daly based on the denial of free exercise of religion and the substantial burden on religious practices.

If this report and recommendation is approved, the claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt of this report and recommendation, or he must properly move to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: January 26, 2007
cc:  Charles Jay Wolff, pro se

12