UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Charles Jay Wolff

   v.                                                Civil No. 06-cv-321-PB

New Hampshire Department of
Corrections, et al.

**O R D E R**

Before the Court is Charles Wolff's motion for emergency injunctive relief (document no. 38). A hearing on the motion was held before me on August 1, 2007. Wolff alleges that he has not been provided with a diet that meets both his spiritual and medical needs, and that he is not receiving adequate pain medication to treat pain caused by his serious medical conditions. Defendants object (document no. 40).

The Court has reviewed all of the documents filed by Wolff in support of this action as well as the testimony and evidence presented at the hearing. Upon reviewing all of the relevant information in this matter, the Court is now fully apprised of the argument the plaintiff was attempting to make during the August 1 hearing regarding the problem he is having with his kosher diet.

Wolff testified that he is currently provided with a Kosher diet that meets his religious needs.  Certain items on the prison's standard Kosher diet, such as sweets, bread, soy, tofu, and fish, are restricted for Wolff due to his diabetes.[1]  At some time in the last several years, the prison changed its kosher food menu.  In the past, the prison served Kosher inmates prepackaged frozen food.  Now, the prison has replaced the frozen entrees with shelf stable Kosher entrees that can be steamed and served to the inmates without any kitchen worker having to touch the food, resolving some issues that surround the preparation of kosher food in an otherwise non-kosher kitchen.  Wolff testified at the hearing that on each occasion when he has eaten the shelf stable prepackaged foods, he has suffered from severe cramps and diarrhea, often lasting throughout the day.  Wolff has accommodated this reaction by refusing to eat the shelf stable

---

[1]Interestingly, however, the diet is not restricted to accommodate other significant medical issues plaguing Wolff.  For example, although Wolff is being treated for heart problems he has developed during his incarceration, which include at least one prior heart attack and heart surgery, high cholesterol, and high blood pressure, he is routinely fed meals consisting largely of eggs, commonly known to be high in cholesterol, as part of his regular diet.

entrees.[2] Wolff contends that there is some ingredient in the shelf stable meals that is causing his digestive problems. While Wolff did not present any medical testimony to support this assertion, his uncontradicted testimony regarding his reaction to the meals, regardless of whether the reaction is caused by a specific ingredient in the food, or Wolff's own inability to tolerate the food, is sufficient for this Court to find that the meals cause Wolff to suffer from severe cramps and diarrhea.

Wolff has addressed his dietary concerns with a number of officials at the prison in the past without receiving any alternative menu or treatment for digestive distress. Specifically, on December 26, 2005, Wolff wrote an Inmate Request Slip ("IRS") directed to Dr. Celia Englander asking for a medical pass at the kitchen to excuse him from eating soy, tofu, and fish, because the reaction to those foods made him ill. According to that IRS, Englander and Wolff had previously discussed the issue, and Englander advised Wolff to identify the meals he couldn't eat and return them to the kitchen supervisor, and that eventually the kitchen staff would catch on and stop

---

[2]Evidence at the hearing demonstrated that in July 2007, Wolff refused to eat the main course of his dinner 29 out of 31 days in order to avoid the digestive issues described above.

serving those items to Wolff.  Instead of receiving a response from Englander, Medical Records Administrator Joyce Leeka responded to Wolff that his "kosher diet is religious, not medical.  Health Services has no responsibility for issues with religious diets."  Wolff received no response regarding the medical concerns he raised.

On January 29, 2006, Wolff sent an IRS to prison health services nursing supervisor Donna Timulty complaining about the diet he was receiving, and again noting that he was receiving eggs and soy.  In that instance, the IRS was not clear as to what the precise medical problem was with the diet, although Wolff had previously addressed the issue with Englander and other health services personnel.  Timulty responded on February 6, 2006, stating "Charlie – as I told you before medical has nothing to do with your Kosher diet.  I also pulled your canteen list there are a number of non-Kosher items purchased by you – I am contacting Chaplain to discuss this with him."

On February 8, 2006, Wolff sent an IRS to Health Services Director Dr. Robert McLeod complaining that Timulty had refused to help him with medical problems with his kosher diet.  In addition, Wolff's unit manager, John Kovacs, added a signed note

4

to McLeod stating "Mr. MacLeod, why he is writing to you is because he feels what he is being given to eat directly effects [sic] his health and for that reason is a medical issue.  He is telling you he can not eat eggs, soy, chicken, tofu and regular kitchen bread."  The January correspondence with Timulty was attached to the IRS.  On February 22, 2006, MacLeod wrote back "This is a religious diet issue.  Other nutritional concerns please contact Health Services."

On February 23, 2006, Wolff sent an IRS to MacLeod which reiterated that he was raising a medical issue.  On February 27, 2006, Wolff received a reply from prison chaplain James Daly, rather than MacLeod, which stated "This is not a religious issue, it's a nutritional issue."

Rick Stacy, a supervisor in the prison kitchen, explained at the hearing that when an inmate is designated to have a kosher meal, the prison takes care to provide him with that meal.  If an inmate refuses an entree, he can still get the rest of his meal, but does not get an alternative.  Stacy testified, however, that if an inmate has a medical pass that indicates he cannot tolerate certain foods, than a substitution of approximately the same nutritional value is made.  Stacy clearly stated that this is

something the kitchen staff is willing to do and that the kitchen is capable of providing an alternative.  Stacy testified that an inmate presenting such a problem to kitchen staff would be referred to health services to obtain an appropriate medical pass.

In Wolff's case the matter is complicated by the fact that he has Type II diabetes, which is controlled by diet.  If Wolff is not receiving an appropriate diet, or is not eating enough because of his reaction to the food provided, he will have a serious diabetic reaction.  Wolff testified that foregoing food that makes him ill has caused him to collapse and lose consciousness on three occasions at the prison.

It appears that there is a significant disconnect between Wolff and health services.  It is abundantly clear that the issue raised by Wolff is not a religious issue, but a medical issue. He is expressing a physical intolerance to the food he is given. While the food he is given happens to be Kosher, and while any substitute or alternative food provided would also have to be Kosher to accommodate Wolff's religious views, that does not transform a medical problem into a spiritual or religious one. Further, the Court appreciates that the kitchen has neither the

expertise nor the authority to provide alternative meals without a medical pass.  In view of the above, it is apparent that Wolff has attempted to resolve medical and dietary issues through every channel available to him, and, simply put, has been given the "run around."[3]  As the defendants are aware, they may not refuse Wolff a medically appropriate diet simply because he is receiving a Kosher diet.  Wolff is entitled to a diet that is both Kosher and that meets his medical and nutritional needs, and that his digestive system can tolerate.

I therefore order the defendants to respond within twenty (20) days of the date of this Order, and to advise this Court of the following:

   (1)   What actions the prison and its employees intend to take to evaluate Wolff's present medical condition in light of his intolerance for and reactions to the food he is presently being served; and

   (2)   How, specifically, the prison and its employees plan to remedy Wolff's situation if it is discovered by the medical personnel that Wolff is not able to tolerate the food presently being provided or offered to him, or

---

[3]While it is clear that Wolff has complained about the shelf stable meals, and his reaction thereto, it is not entirely clear that he has brought this specific complaint to the attention of a specific physician at the prison.  It is reasonable, however, that the medical department is aware of Wolff's complaint, and that Wolff's complaint regarding the shelf stable meals would receive the same treatment as did his complaints regarding soy, bread, and fish.

>    that the food does not adequately meet Wolff's
>    particular nutritional needs in light of his medical
>    conditions and religious beliefs.

I will rule on the plaintiff's motion for a preliminary injunction after I receive the defendants' response to this Order.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:     August 2, 2007

cc:       Charles J. Wolff, pro se
          Andrew Livernois, Esq.