```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Charles Jay Wolff**

    **v.**                                            Civil No. 06-cv-321-PB
                                                              Opinion No. 2008 DNH 071

**New Hampshire Department
of Corrections, et al.**

### MEMORANDUM AND ORDER

Charles Jay Wolff, a prisoner at the New Hampshire State Prison ("NHSP") brings claims under 42 U.S.C. § 1983 and Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"). Wolff's primary claim is that the New Hampshire Department of Corrections ("NHDOC") and several employees and officials of NHDOC violated his constitutional right to free exercise of religion and placed a substantial burden on his religious practices when they failed to provide him with a religiously and nutritionally acceptable kosher diet. Defendants move for summary judgment on Wolff's claim, arguing that there is no genuine issue of material fact and that the undisputed facts demonstrate that Wolff's constitutional rights were not violated. For reasons discussed below, I grant

defendants' motion for summary judgment as to this claim only.

## I. BACKGROUND[1]

Charles Wolff has been incarcerated since approximately 1996. Wolff has received medical treatment throughout his incarceration, including treatment for hypertension, post-traumatic stress disorder, high cholesterol, diabetes, Cushing's Syndrome, metabolic syndrome, coronary artery disease, hypomania, and prostate cancer. See Testimony of Leeka at 19-22. During his time in prison he has had numerous surgeries including removal of his left adrenal gland, removal of a benign adenoma of his colon, implantation of a radiation seed to treat prostate cancer, and implantation of a stent in his right coronary artery. See id.; Testimony of Wolff at 41-47.

---

[1] The facts are drawn from Defendants' Memorandum in Support of Motion for Summary Judgment (Doc. No. 96-2) and the sworn testimony of witnesses at the preliminary injunction hearing held before Judge Muirhead on August 1, 2007. See Transcript of Preliminary Injunction Hearing, Wolff v. N.H. Dept. of Corr. et al., Case No. 06-cv-321-PB (Aug. 1, 2007), Testimony of Wolff (Doc. No. 74) [hereinafter "Testimony of Wolff"]; Transcript of Preliminary Injunction Hearing, Wolff v. N.H. Dept. of Corr. et al., Case No. 06-cv-321-PB (Aug. 1, 2007), Testimony of Stacy, Leeka, and Daly (Doc. No. 100) [hereinafter "Testimony of [Witness]". I note those facts that Wolff disputes, and I base my decision solely on undisputed facts.

In approximately 2003, NHSP began offering kosher meal plans to inmates who demonstrated religious dietary requirements. Wolff, who identifies as Jewish, has received kosher meals for lunch and dinner since at least 2004.  At first, the prison served pre-packaged frozen kosher meals, but as the number of inmates on kosher diets increased, limited freezer space caused the prison to switch to pre-packaged shelf-stable kosher meals.

Jeff Perkins, the NHSP Food Service Supervisor, states that "there have been numerous instances of Charles Wolff eating non-kosher food and as a sanction being taken off his kosher diet for a short period of time."  Aff. of Perkins at ¶ 28.  Specifically, Perkins points to June 2006, when Perkins received a report that Wolff had eaten non-kosher hot dogs and Wolff allegedly threw away his kosher meal and confirmed to Perkins that he had eaten the hot dogs.  Id.  Perkins stated that due to that incident, he then failed to provide Wolff with a kosher meal pursuant to New Hampshire DOC Policy and Procedure Directive ("PPD") No. 7.17 V(G)(2)(d) (2006).[2]

---

[2] Under PPD 7.17, the Unit Manager is authorized to suspend an inmate's religious diet for six months if he determines that the inmate knowingly violated the religious diet.  (See Ex. C to Def.'s Mot. for Summ. J.)

The warden and prison chaplain reinstated Wolff's kosher diet at some point following this suspension, and Perkins was told that, in the future, decisions about suspending an inmate's kosher diet were to be made by the Unit Manager. Aff. of Perkins at ¶ 28. Perkins also states that Wolff told Perkins that he would eat non-kosher scrambled or fried eggs, that a kitchen staff member reported seeing Wolff eating scrambled eggs, and that Wolff's canteen sales report from May 2005 to November 2005 shows that Wolff purchased numerous non-kosher foods. Id. at ¶ 25-26.

In his amended complaint, Wolff denies that he ever ate non-kosher food. See Response to Order Directing Pl. to File Amended Compl. at 5 (Doc. No. 10). Wolff claims that the people accusing him of purchasing and eating non-kosher food were mistaken; the food was actually kosher. Id. at 4-5. Wolff claims that on one occasion where the Head of Recreation at NHSP reported to Perkins that Wolff had eaten non-kosher ice cream, both a prison chaplain and a rabbi confirmed that the ice cream was kosher. Id.

In August 2006, Wolff brought claims under 42 U.S.C. § 1983 and RLUIPA on the grounds that various prison officials have denied him free exercise of religion and have placed a

-4-

substantial burden on his religious practices.  On January 26, 2007, I accepted Magistrate Judge Muirhead's recommendation that Wolff adequately stated First Amendment and RLUIPA claims against William Wrenn (Commissioner of the NHDOC), Perkins, and Deacon James Daly, a prison chaplain.  Specifically, Wolff claimed that the defendants violated his rights in two ways: first, by taking away his kosher diet as a sanction for eating non-kosher food and, second, by serving kosher food that is inadequate to meet his medical and nutritional needs.

Wolff moved for emergency injunctive relief in July 2007; an evidentiary hearing was held on the motion before Judge Muirhead on August 1, 2007.  Testifying at the hearing were:  Richard Stacy, a prison Kitchen Supervisor;  Joyce Leeka, the NHSP Administrator of Health Information Management; Daly; and Wolff.  At that hearing, Wolff stated that he had been offered kosher meals consistently, but that he regularly refused them because they caused him to have stomach cramps and diarrhea.  Testimony of Charles Wolff at 63-65.  Wolff also alleged that the prison officials failed to provide him with an appropriate dosage of ibuprofen and failed to fill his prescription for Mylanta.  Id. at 27-29.  Wolff made several other unsubstantiated allegations

against various prison employees that I need not address.[3]

At the hearing, Leeka testified as to Wolff's medical history, and Stacy testified as to the prison's policies and procedures regarding kosher meal service.  Stacy testified that the kosher meals are prepackaged and either heated or cooled (depending on the type of meal) in the packaging so that the kitchen staff handles only the outer packaging, not the food itself.  [Testimony of Stacy at 7-9](). Stacy testified that if Wolff presented the kitchen staff with an order from Health Services saying that he had a medical problem with eggs or other food, he would give Wolff a substitution.  Id. at 11-12.

The Magistrate Judge issued a preliminary order on August 2, 2007, directing defendants to provide the court with a notification of what actions the prison would take in order to evaluate Wolff's medical condition and what remedy the prison

---

[3] Wolff alleged at the hearing that a kitchen worker named Phil took his ID and kept it for three days, causing Wolff to miss nine meals, physical therapy, and a medical appointment. [Testimony of Wolff, Transcript at 15](). At another point during the hearing, he alleged that a kitchen worker named Paul Laflamme was throwing his meals out. [Testimony of Wolff, Transcript at 20](). Neither of these workers or incidents are named in Wolff's complaint and no evidence has been provided to substantiate these claims, therefore I do not address them here.

would employ, if it were found that Wolff could not tolerate the meals being provided. Defendants complied and monitored Wolff at the prison infirmary from August 7-14, 2007.

Defendants submitted detailed observational notes from this week-long period. See Response re: Order on Motion for Prelim. Injunction (Doc. No. 50). During this time, Wolff ate four pre-packaged shelf-stable kosher meals and refused the other kosher meals. On two occasions, he complained of cramping. He also complained of having diarrhea, but medical staff observed his stools and determined that, except for one occasion where a "scant" amount of loose stool was found, all of the stools were firm and not affected by eating the prepackaged kosher meals.

After receiving the results of the seven-day evaluation, the Magistrate Judge issued a Report and Recommendation denying Wolff's motion for an injunction on October 17, 2007. I approved the Report and Recommendation on October 30, 2007.

In addition to the seven-day observation, Dr. Celia Englander, the Chief Medical Officer for the New Hampshire Department of Corrections, ordered additional medical testing and evaluations for Wolff. See Aff. of Englander at ¶ 4-8. Dr. Englander ordered an outside nutritional consultation at Catholic

Medical Center that was held on August 31, 2007, arranged for allergy testing of Wolff in October 2007, and sent Wolff to Catholic Medical Center for an upper GI x-ray in October 2007 and an upper endoscopy in December 2007.  At his nutritional consultation, the nutritionist determined that Wolff's weight was normal.  Id. at 4.  The allergy testing was negative as to an egg allergy, and Wolff refused further allergy testing.  Id. at 5-6.  The upper GI x-ray detected mild acid reflux but was otherwise normal, and the upper endoscopy revealed a small hiatel hernia, mild esophageal inflammation, and mild acid reflux.  Id. at 7-8.  Dr. Englander concluded that there is no medical evidence that Wolff's diet is having an adverse effect on his health or his stomach.  Id. at ¶10.

Defendants now seek summary judgment on Wolff's claims, arguing that there is no genuine issue of material fact as to whether Wolff's rights were violated.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must first identify the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III. ANALYSIS

Wolff's primary claim is that Wrenn and Perkins[4] interfered with his free exercise of religion and placed a substantial burden on his religious freedom by serving him kosher meals that he is unable to eat for medical reasons. Wolff claims that these actions violate his First Amendment constitutional right to freedom of religion and his statutory rights under RLUIPA. He brings his constitutional claim pursuant to 42 U.S.C. § 1983.

---

[4] Wolff orally dismissed his claims against Daly at the hearing. Testimony of Wolff at 21.

Wolff's claim is not that kosher meals have been denied to him, but that he is unable to eat the kosher meals served at the prison because they make him sick.  See Testimony of Wolff at 64-65, Testimony of Daly at 35-37 (statements of Wolff); Report and Recommendation of October 17, 2007 at 11.  For Wolff's claim to succeed, he must establish that the meals made him ill in some way.  Because Wolff has not submitted evidence from which a reasonable juror could conclude that a causal link exists between his claims of illness and the prison's kosher meals, his claim must fail.

While Wolff claims that there is some substance in the shelf-stable meals, such as a chemical or preservative, that makes them intolerable to him, he has failed to submit any evidence to substantiate this speculation.  See Testimony of Wolff at 64, Testimony of Daly at 37-38.  His medical records, as well as the extensive testing and evaluations ordered by Dr. Englander, are devoid of any suggestion that he is unable to tolerate the kosher meals being offered to him.  See Aff. of Englander at ¶ 10-11.  Wolff offers only his own subjective complaints about the meals, and his claims of illness as a result of the meals are wholly unsubstantiated.  Therefore, I grant

-10-

defendants' motion for summary judgment with respect to Wolff's claim that the prison is violating his constitutional rights by serving the shelf-stable kosher meals.

Finally, I note that Wolff also raised allegations at the evidentiary hearing regarding the prison's failure to provide him with his requested dosage of ibuprofen and the prison pharmacy's failure to fill his prescription for Mylanta. See Testimony of Wolff at 44-46. With respect to both claims, Wolff has failed to show that the prison officials acted with "deliberate indifference to [his] serious medical needs" by not increasing his dosage of ibuprofen and by requiring him to purchase a liquid antacid at the canteen rather than providing Mylanta at the prison pharmacy. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Where a plaintiff's allegations "simply reflect a disagreement on the appropriate course of treatment," the allegations "fall[] short of alleging a constitutional violation." See Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006). Therefore, to the extent that Wolff stated a claim for inadequate medical care or treatment arising from these issues, the claim

fails as a matter of law.[5]

### IV. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment ([Doc. No. 96](Doc. No. 96)) is granted in part. If the defendants wish to seek summary judgment on Wolff's remaining claim, they shall file a motion with 30 days.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

April 2, 2008

cc:  Charles J. Wolff, pro se
     Deborah B. Weissbard, Esq.

---

[5] Wolff also asserts that the prison officials interfered with his free exercise of religion and placed a substantial burden on his religious freedom when they revoked his kosher meals pursuant to PPD 7.17 based on erroneous allegations that he had purchased and eaten non-kosher food. The defendants' summary judgment motion fails to adequately address this claim. Therefore, this summary judgment order extends only to the claim addressed in defendants' motion and Wolff's claim regarding deprivation under PPD 7.17 is not affected by this order. If the defendants believe they have a basis for summary judgment on this claim, they shall file a motion within 30 days.